O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISETTE CRYSTAL VASQUEZ, | ) Case No. EDCV 13-631-OP ) |
| Plaintiff, | ) ) MEMORANDUM OPINION AND |
| v. | ) ORDER ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issue listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 9, 10.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 7 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the sole disputed issue raised by Plaintiff as the grounds for reversal and/or remand is whether the ALJ erred in concluding that Plaintiff's mental and physical impairments do not meet Listing 12.05C. (JS at 5.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# **DISCUSSION**

**A.  Background.**

Plaintiff was originally found disabled due to mental retardation based on the childhood disability guidelines. (Administrative Record ("AR") at 57.) She received Supplemental Security Income benefits until she turned 18, at which time

her condition was reevaluated. (Id.) The Social Security Administration ("Administration") determined that Plaintiff was no longer disabled as of March 1, 2009.[3] (Id. at 51.) On May 4, 2010, a hearing was held before an ALJ who issued an unfavorable decision on July 1, 2010. (Id. at 5-15.)

The ALJ found that Plaintiff has the severe impairments of mental retardation, post-traumatic orthopedic changes of the hip, and hip dysplasia. (Id. at 10.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work with the following additional comments/limitations: lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking four hours in an eight-hour day with normal breaks; sitting without limitation with normal breaks such as every two hours; bending, kneeling, stooping, crawling, and crouching on an occasional basis; walking on uneven terrain, climbing ladders, and working at heights on an occasional basis; can perform overhead activities and has full use of her hands for fine and gross manipulative movements; and limited to simple, repetitive tasks. (Id. at 11-12.)

Relying on the testimony of the vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled medium occupational base, the ALJ asked the VE whether, in light of Plaintiff's age, education, work experience, and RFC, she would be able to perform any jobs existing in the national economy. (Id. at 19-20, 45-48.) Based on the testimony of the VE, the ALJ determined Plaintiff could perform a variety of unskilled SVP level 2 jobs, which existed in significant numbers in the regional and national economy. (Id. at

---

[3] The fact that Plaintiff received SSI benefits as a child has no bearing on her application for benefits as an adult. The regulations provide that individuals who are eligible for SSI benefits as children "must have their disability redetermined under the rules for disability used for adults." 20 C.F.R. § 416.924 (explaining the three-step childhood disability assessment process); id. § 416.920 (explaining the five-step adult disability assessment process).

14.)

On April 19, 2011, the Appeals Council denied Plaintiff's request for review. (Id. at 1.)

Plaintiff appealed the decision of the Appeals Council by filing an action in this Court, Case Number EDCV 11-883-OP  (AR at 312-31.)  On February 21, 2012, the Court remanded the matter to the Administration for further proceedings. (EDCV 11-883-OP ECF No. 18.)

**B.     The ALJ's Opinion on Remand.**

On remand, the ALJ found that Plaintiff has the severe impairments of obesity, degenerative joint disease of the right hip, asthma, and borderline intellectual functioning.  (AR at 251.)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional comments/limitations:  can lift and/or carry fifty pounds occasionally, and twenty-five pounds frequently; can stand and/or walk for four hours out of an eight-hour work day with regular breaks; can sit for six hours of an eight-hour work day with regular breaks; is limited to standing and walking for short distances or durations; can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds; can occasionally bend and stoop; can frequently kneel, crouch, or crawl; should avoid concentrated exposure to temperature extremes, wetness, and humidity; should avoid even moderate exposure to pulmonary irritants; should avoid all exposure to hazards such as unprotected heights; is limited to simple and repetitive tasks in a non-public setting; is precluded from jobs requiring responsibility for the safety of others; and is precluded from tasks requiring significant reading, writing, or math. (Id. at 253-54.)

Relying on the testimony of the VE, the ALJ found Plaintiff could perform such occupations as assembler of small parts, production assembler, and swatch clerk.  (Id. at 262.)

**C.**   **The ALJ Did Not Err in Concluding that Plaintiff's Mental and Physical Impairments Do Not Meet Listing 12.05(C).**

   **1.**   **Background.**

Plaintiff contends that she qualifies for Social Security Disability benefits because she meets the requirements of Listing 12.05C, given her IQ scores, in combination with her severely arthritic hip. (Id. at 9-10 (citing AR at 194, 220-24).)

   **2.**   **Listing 12.05C.**

      **a.**   **First Prong of Listing 12.05C.**

Plaintiff contends that she is disabled because she meets the requirements of Listing 12.05C. Unlike other mental listings, Listing 12.05 does not require the Commissioner to assess the severity of the claimant's impairment according to the functional limitations imposed by the impairment, including daily activities, social functioning, and concentration, persistence, and pace. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. According to Listing 12.05, a claimant's impairment will meet that listing if it satisfies any of the given criteria of the listing. Id. In the case of Listing 12.05C, the following criteria are required to support a disability finding: (1) that a claimant have a valid IQ of 60 to 70 inclusive, and (2) that the claimant have an additional significant physical or mental functional limitation. Id. § 12.05C. Listing 12.05 itself "does not require a diagnosis or finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.'" Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2010) (citing Soc. Sec. Ruling 83-19). The first prong of the listing, the IQ, is only met when the ALJ determines that the test results are valid. 20 C.F.R. pt. 404, subpt. P, App. 1.

      **b.**   **Second Prong of Listing 12.05C**

To satisfy the second prong of Listing 12.05C, the claimant must have "a physical or other mental impairment imposing an additional and significant

5

work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05; see Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) ("[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.") (quoting Sird v. Chater, 105 F.3d 401, 403 n.6 (8th Cir. 1997)).

In this case, the parties appear to agree that only the first prong of Listing 12.05C is at issue.

### 3. Plaintiff's IQ Test Results.

Plaintiff has been examined by three consultative clinical psychologists: Charlene K. Krieg, Ph.D., Kim Goldman, Psy.D., and psychologist, Margaret Donahue, Ph.D. Additionally, David Glassmire, Ph.D., a clinical psychologist, Board certified in forensic psychology, testified at the hearing as a medical expert.

On February 26, 2009, Dr. Krieg found that Plaintiff's WAIS-III scores (75 Verbal; 59 Performance; 65 Full Scale) suggested she was in the mildly mentally retarded to borderline range of intelligence.[4] (AR at 13, 172-77.) Dr. Krieg noted that Plaintiff's "attitude was one of disinterest in the tasks at hand" and that Plaintiff was "moderately to minimally cooperative and did not appear to be putting forth her best effort." (Id. at 172-73.) Dr. Krieg also noted "qualitative discrepancies in [Plaintiff's] performance . . . in that she performed better on the more difficult Trail B items." (Id. at 176.) Dr. Krieg found that Plaintiff had the ability to understand the test questions and follow directions. (Id. at 174.) She also questioned the validity of the psychological test results, noting that Plaintiff's scores on the Test of Malingered Memory ("TOMM") were "in the very probable range for malingering, which raises the question of a conscious or unconscious

---

[4] On the WAIS-III Plaintiff scored a Verbal IQ of 75 (borderline range), a Performance IQ of 59 (mild mental retarded range), and a Full Scale IQ of 65 (mild mental retarded range). (AR at 175.) If valid, the scores of 59 and 65 both satisfy the first prong of Listing 12.05C.

effort to feign impairment, i.e., fake bad." (Id. at 176.)

Similarly, on July 1, 2009, Dr. Goldman found that Plaintiff was only "superficially cooperative throughout the evaluation" and "did not make an adequate effort on the tasks presented to her." (Id. at 226.) Dr. Goldman found that Plaintiff was "allegedly unable to correctly state her age or date of birth, and "appeared to volitionally present herself with a severely deficient fund [of information]" and was "allegedly unable to correctly state the shape of a ball." (Id.) Dr. Goldman aborted the Wechsler Memory test "due to [Plaintiff's] uncooperative stance," also noting that Plaintiff "was allegedly unable to read all the letters of the alphabet . . . [or] to spell any words " and reported that 1+1=3."[5] (Id. at 227.) After administering the TOMM, Dr. Goldman concluded that "[Plaintiff] is attempting to simulate cognitive impairment." (Id.) Dr. Goldman found the test results "are not valid," offered no opinion as to whether Plaintiff's impairments met any listing and diagnosed malingering. (Id. at 227-28.)

On July 14, 2012, Dr. Donohue conducted yet another psychological evaluation of Plaintiff. (Id. at 446-52.) She noted that Plaintiff's motor activity "shows intentional motor slowing," and her interview "behavior shows a decisive lack of cooperation in the range of malingering." (Id. at 448.) Plaintiff was able to relate the year, month, day of the week, date, and county, but did not know in a one-story building what floor she was on. (Id. at 449.) Dr. Donohue concluded the scores were not valid, found raw scores of 0 on Symbol Search and Information, and noted that Plaintiff claimed the day after Monday is Thursday, the shape of a ball is an oval, had difficulty matching two red blocks, and stated that a horse and

---

[5] Dr. Goldman had reviewed Plaintiff's medical records and noted that Plaintiff's school records described her as "able to read and comprehend most classroom texts with assistance; able to write simple sentences, summaries, short answers, short paragraphs, letters; research articles with assistance and able to communicate most basic math facts." (AR at 226.)

tiger are human. (Id. at 451.) According to Dr. Donohue, Plaintiff failed other preschool level items, and was not able to recite two digits consistently in forward or reverse order. (Id.) Dr. Donohue repeatedly noted that none of Plaintiff's test scores were valid and all were indicative of malingering. (Id. at 448, 449, 450, 451, 452.) Dr. Donohue that there was "no known psychological, neurological, or psychiatric reason that would account for" Plaintiff's not responding appropriately to testing. (Id. at 452.) Dr. Donohue flatly stated that Plaintiff "shows evidence of malingering . . . [and] [i]f this claimant is currently receiving benefits, the fraud unit needs to be contacted." (Id. at 451.)

Dr. Glassmire testified at the hearing that Plaintiff had the medically determinable impairment of borderline intellectual functioning, but that her impairments, singly or in combination, did not meet or equal listing 12.05C. (Id. at 258.) Specifically, Dr. Glassmire testified that the IQ test results indicated Plaintiff knew the right answers and intentionally chose the wrong ones, it is not likely that Plaintiff has an IQ less than 70 based on her level of functioning in her prior academic environment, and that all of the IQ test results were invalid due to Plaintiff's lack of effort. (Id.)

### 4. **Analysis.**

In an unpublished decision, the Ninth Circuit has stated that it "do[es] not doubt" that an ALJ can decide that an IQ score is invalid, but also noted that it has "never decided what information is appropriately looked to in deciding validity of an IQ score." Thresher v. Astrue, 283 Fed. App'x 473, 475 (9th Cir. 2008). That court also recognized that some courts have said that a score can be questioned on the basis of "other evidence," and that other courts require "some empirical link between the evidence and the score." Id. at 495 n.6 (citations omitted). Consequently, some circuits have allowed the ALJ to use several factors in assessing the validity of test results. See, e.g., Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005) (holding that the ALJ is free to disregard a low IQ score where the

evidence showed substantial malingering and daily activities inconsistent with the level of impairment alleged); Soto v. Sec'y, 795 F.2d 219, 222 (1st Cir. 1986) (holding that the ALJ need not accept the IQ score if there is a substantial basis for believing that plaintiff is feigning results). Other circuits have allowed an ALJ to discredit a test result when inconsistencies between tests indicated a high possibility of malingering. See, e.g., Burchfield v. Astrue, No. CV 11-00590-PHX-FJM, 2011 WL 5975764, at *4 (D. Ariz. Nov. 30, 2011) (evidence that claimant did not make a serious effort in testing may properly be considered when determining validity of an IQ score); Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986).

  Here, the ALJ gave great weight to the opinions of Dr. Glassmire, and significant weight to the findings and opinions of Dr. Krieg (who opined that the test results were possibly not valid), Dr. Goldman (who diagnosed malingering and invalid test scores), and Dr. Donahue (who opined that the test scores were not valid, Plaintiff showed a "lack of cooperation in the range of malingering," and Plaintiff should be reported to a fraud unit if she were currently receiving benefits). (Id. at 258-59.) The ALJ also considered Plaintiff's school records. (Id. at 255-56.) The ALJ noted that Plaintiff maintained a GPA of 3.326, was able to read and comprehend classroom texts with assistance, and graduated high school in May 2008 with a certificate of completion. (Id.) The ALJ also noted that Plaintiff's school STAR report scores indicated she was below basic in English language skills and far below basic in general math skills. (Id. at 256.) The ALJ considered these limitations in making her RFC determination. (Id.) Based on all of the evidence, the ALJ concluded that Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70," because the "record does not include a valid IQ score." (Id. at 253.)

  Plaintiff's contention that Dr. Glassmire "cherry picked" evidence by pointing to Plaintiff's higher 75 Verbal IQ as being consistent with his opinion, but

ignored the other lower scores which he "should also have found [valid]," is without merit.  (JS at 8.)  Dr. Glassmire's point was merely that Plaintiff's assessed verbal ability was *at least* in the borderline range, regardless of whether she also malingered on that portion of the test.  It does not follow that simply because Plaintiff had "at least" a 75 Verbal IQ, her Performance IQ score of 59 and Full Scale IQ score of 65 were valid scores; in fact, Dr. Glassmire did not state that Plaintiff's Verbal IQ score was any more valid than the other two scores – only that it was *at least* in that range because "you can't fake a better performance than your cognition allows."  (AR at 286-87.)

      Accordingly, the Court finds there was no error in the ALJ's finding that Plaintiff did not meet or equal Listing 12.05C because there has been no valid verbal, performance, or full scale IQ score between 60 and 70.

## IV.

## **ORDER**

      Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: November 26, 2013

                            HONORABLE OSWALD PARADA
                            United States Magistrate Judge